Affirmed and Memorandum Opinion filed January 20, 2011. 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00492-CR



 

Donald William Pugh, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 1210055



 

MEMORANDUM  OPINION

Donald William Pugh appeals his manslaughter conviction
on grounds that (1) the evidence is legally and factually insufficient; (2) the
trial court erred by admitting expert testimony regarding accident
reconstruction; (3) the trial court erred by denying his motion for
continuance; (4) the trial court erroneously denied his motion to recuse; and
(5) the trial court erred by allowing the State to introduce evidence of an
extraneous car accident.  We affirm.

Background

I.                  
Appellant is Indicted in Connection With a January 2008 Accident

Appellant was indicted for manslaughter in connection
with a January 7, 2008 accident in which a vehicle operated by appellant struck
multiple vehicles that were stopped at a red light on an I-10 feeder road in
Houston.  One of the vehicles was occupied by Sarah Hoffecker, who died in the
accident.   

Appellant initially was indicted for intoxication
manslaughter.  The State re-indicted appellant on April 2, 2009 and charged him
with recklessly causing Hoffecker’s death by driving and operating a motor
vehicle (1) contrary to medical instructions; (2) while failing to follow medical
aftercare instructions; (3) while failing to take prescribed seizure
medication; or (4) while disregarding a known risk of seizure and while having
a seizure.  Appellant filed a motion for continuance on April 15, 2009 on
grounds that 
(1) the State re-indicted him “on a new charge of manslaughter” on April 2,
2009; and (2) trial counsel “sustained either a very severe sprain and bone
bruise or a bone chip fracture.”  The trial court denied appellant’s motion for
continuance on April 15, 2009.

Appellant’s case was set for trial on April 21, 2009. 
Before voir dire began that day, the trial court asked appellant’s trial
attorneys if they intended to adopt a pro se recusal motion filed by appellant. 
When both attorneys refused to adopt it, the trial court declined to rule on the
motion because Texas law does not recognize hybrid representation.  Shortly
thereafter, appellant fainted in the courtroom.  Emergency medical technicians
were called to the courtroom, examined appellant, reported that he was fine,
and took him to the hospital for an evaluation.  The trial court continued
appellant’s case until April 29, 2009.

II.              
Trial Begins on April 29, 2009

Voir dire was conducted on April 29, 2009, and the
jury began hearing evidence on April 30, 2009.  

Houston Police Officer Joseph D’Eugenio testified
that he was dispatched around noon on January 7, 2009 to an accident scene on
the north side of Interstate 10 at the intersection of the I-10 feeder road and
Kirkwood.  He arrived to find appellant’s four-door Toyota Avalon sedan badly
damaged and appellant trapped inside the car with his right foot wedged under
the gas pedal area.  Hoffecker was nearby in a badly damaged four-door Infiniti
sedan; she had died at the scene.  A Cadillac and a Pontiac also were involved
in the accident.  When Officer D’Eugenio asked appellant what had happened, he said
his knee had given out.

Kristal Ramsey testified that she had taken the
Kirkwood exit from I-10 in her Cadillac.  She was stopped in the second left turn
lane at the intersection of Kirkwood and the I-10 feeder road facing west waiting
for the light to turn green.  Ramsey testified that the accident occurred in
the lane to her left.  She testified that her driver’s side mirror broke off
when appellant’s car struck it before hitting Hoffecker’s Infiniti.  Ramsey estimated
that appellant was driving between 55 and 60 mph just before impact; she never
heard braking even though the light was red.

Houston Police Officer A.N. Taylor, who is assigned
to the Houston Police Department accident division, determined that four
vehicles had been involved in the fatal accident.  He opined at trial that
appellant’s Toyota Avalon was traveling westbound along the feeder road when it
struck the driver’s side mirror of Ramsey’s Cadillac and then hit Hoffecker’s
Infiniti from behind.  Either appellant’s Toyota or Hoffecker’s Infiniti then struck
the Pontiac’s left side.  Officer Taylor testified that the speed limit on that
portion of the feeder road is 35 mph.

Paramedic Stacy Broderick treated appellant and
transported him from the accident scene to the hospital.  Broderick testified
that appellant said (1) he did not remember what happened; (2) he had a history
of seizures; and (3) he probably had had a seizure.  Broderick testified that
appellant had another seizure while he was in triage after the accident.

Houston Police Officer Robert Kessler testified that
he was a certified accident reconstructionist at the time he investigated the
January 7 accident.  Officer Kessler stated that this accident was a
“high-speed crash.”  He testified that he believed 

the Infiniti was stopped in the — what would be the left
lane [and] was struck by the Toyota in the right rear causing the damage to the
Infiniti and the front of the Toyota being shoved backwards.  Upon impact from
the Toyota to the Infiniti, the Infiniti is accelerated to a speed consistent
with the Toyota not too far off from the speed at the time of impact. 
Basically, the energy is transferred from the Toyota to the Infiniti, which
carries — which actually carries both of them across the intersection.

Officer Kessler opined that appellant’s
Toyota Avalon was traveling at approximately 82 mph when it hit Ramsey’s
Cadillac and Hoffecker’s Infiniti.  

III.           
Trial is Suspended After One Day of Testimony

Appellant checked himself into the hospital after the
first day of testimony.  He remained in the hospital until the trial court
revoked his bond on May 5, 2009.

On May 4, 2009, appellant’s trial attorneys and the State
appeared before the trial court.  Appellant was not present.  Appellant’s trial
attorneys announced their intent to file a motion for continuance.  They argued
that appellant’s case should be continued because (1) appellant was still in
the hospital; (2) appellant potentially had been misdiagnosed with a seizure
disorder when he may have a condition called “syncope;”[1]
(3) this evidence came to light on April 29, 2009; and (4) neurologist Dr. David
Chen, who was a witness in appellant’s case, had been diagnosed with a tumor
and was scheduled to have surgery.  

The trial court took appellant’s motion for
continuance under advisement until Dr. Chen could be deposed.  The trial court
then arranged for Dr. Chen to be deposed later during the day on May 4, 2009. 
After the parties concluded questioning Dr. Chen, the trial court asked Dr.
Chen whether syncope is life-threatening so as to necessitate immediate testing. 
Dr. Chen opined that syncope is not life-threatening and, because prior syncope
tests conducted on appellant were “unremarkable,” appellant safely could sit in
the courtroom.

On May 5, 2009, the trial court held a hearing and
revoked appellant’s bond.  At the hearing, the trial court stated the following
reasons for revoking appellant’s bond: (1) after a jury had been picked and a
day of testimony had been heard, appellant failed to come to court for several
days without providing medical documentation or a doctor’s note; (2) “the
social worker just said [appellant] was simply in the hospital to be tested for
syncope;” (3) Dr. Chen “said it was simple testing, [appellant] had already
tested before, unremarkable, perfectly safe to be here;” and (4) appellant “is a
habitual while out on bond.  The State has produced evidence he was using
marijuana while out on bond.”  The trial court then continued the case until
May 18, 2009.

Appellant subsequently filed a motion to recuse the
trial judge on May 5, 2009, which was heard later that day by Judge Stricklin. 
At the recusal hearing, appellant’s trial attorneys argued that revocation of
appellant’s bond was punitive and evidenced bias by the trial court. 
Appellant’s attorneys contended that appellant “faces substantial danger to his
health if he is sitting, standing, or moving around” and that appellant’s
release from the hospital would be contrary to medical advice.

No medical records or documentation were presented to
substantiate these assertions regarding appellant’s condition.  Instead, trial
counsel stated, “I anticipate that we will be able to obtain a letter from the
doctor that says, you know, it is a substantial risk to his health.  Medical
records introduced by the State observed that “Patient also report[s] symptoms
of dizziness and light-headedness . . . .  Work-up for syncopal episode by
primary team negative so far.  . . .   In addition, patient under trial
regarding manslaughter charges, so malingering is of consideration.”  Judge
Stricklin denied appellant’s motion to recuse.

IV.            
Trial Resumes on May 20, 2009

When appellant’s trial resumed on May 20, 2009,
Houston Police Officer Francis LaSalle testified that he spoke with appellant at
the hospital after the January 7 accident.  Appellant told Officer LaSalle that
he had no recollection of what happened while he was driving for nine miles
before the accident.  Appellant also told Officer LaSalle that he was taking
seizure medication, and that his last seizure was in 2006.

Dr. Arshad Umer testified that he treated appellant’s
seizure disorder in June 2005 at the West Houston Medical Center emergency
room.  Dr. Umer testified that, before discharging appellant, he instructed appellant
not to drive a car unless appellant was free of seizures for six months.  Since
2005, appellant had numerous seizures and received continuous treatment for his
seizure disorder.

Ruben Sanchez, an HEB grocery store employee,
testified that he observed appellant driving in the store parking lot on
December 12, 2007.  Sanchez said appellant hit a parked truck, turned his
vehicle around, sped up and hit the store’s exterior wall.  Sanchez stated that
appellant never hit the brake, and that the back tire of his vehicle “was in
complete smoke.”  Sanchez testified that that appellant was sitting in the
vehicle and “had his foot on the gas all the way down.”  Appellant “looked like
he was out of it in a way.  He just had a straight focused mind.”

Harris County Deputy Ruben Morales testified that he
was dispatched to the scene of the HEB accident on December 12, 2007 at approximately
12:30 p.m.  Morales testified that appellant “thought he had a seizure because
he had had them in the past.”  Appellant could not remember the details of the
accident; he was confused and glassy-eyed.

Appellant’s family physician, Dr. Albert Oguejiofor,
testified that appellant told him during an October 25, 2007 office visit that
his “seizures were controlled.”  Although appellant’s medical records indicated
that appellant had a grand mal seizure on July 20, 2007, Dr. Oguejifor
testified that appellant did not mention the seizure during his October 25
visit.  Dr. Oguejifor testified that he would not have diagnosed appellant’s
seizures as stable had he known about the July 2007 seizure.  He also stated
that appellant should not have been driving when his seizures were not
controlled.  Dr. Oguejifor testified that appellant came to his office on
January 21, 2008 and complained that his right ankle was swollen because he was
involved in a car accident on January 7, 2008.  Appellant told his doctor that
he had been struck by a big SUV on I-10 while he was driving a small Toyota.

Appellant’s wife, Linda Pugh, testified that she was
sure appellant’s last seizure was in June 2007.  She acknowledged earlier grand
jury testimony in which she stated that appellant’s last seizure was “five months
and 18 days” before the January 7, 2008 accident.

The jury found appellant guilty of manslaughter.  Several
witnesses testified during the punishment phase of the trial including
Hoffecker’s husband Phillip Nelson Trumbly, Hoffecker’s friend Karen Pfeiffer,
appellant’s brother-in-law Paul Plummer, and appellant.  The jury also listened
to a jail tape of a telephone conversation during which appellant “was talking
about getting a driver’s license in another state.”  The jury assessed
appellant’s punishment at life imprisonment.

Analysis

I.                  
Sufficiency of the Evidence

In his first issue, appellant argues that the
evidence is legally and factually insufficient to support his manslaughter
conviction.

We address appellant’s sufficiency challenges under a
single standard for evaluating legal sufficiency of the evidence to support a
finding required to be proven beyond a reasonable doubt.  See Brooks v.
State, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (plurality opinion);
id. at 913-14 (Cochran, J., concurring) (concluding that a separate
factual sufficiency standard no longer applies in criminal cases). That
standard requires us to determine whether, after considering all the evidence
in the light most favorable to the verdict, a jury was rationally justified in
finding guilt beyond a reasonable doubt.  Id. at 902 (plurality
opinion).

Appellant was charged with manslaughter by recklessly
causing Hoffecker’s death.  See Tex. Penal Code Ann. § 19.04 (Vernon
2003).  A person acts recklessly, or is reckless, with respect to the result of
his conduct when he is aware of but consciously disregards a substantial and
unjustifiable risk that the result will occur.  See id. § 6.03(c)
(Vernon 2003).  The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise as viewed from the defendant’s standpoint.  See id.  

The jury was instructed that it could find appellant
guilty of recklessly causing Sarah Hoffecker’s death on January 7, 2008 by
driving and operating a motor vehicle 
(1) contrary to medical instructions, and colliding with a motor vehicle
occupied by Hoffecker; (2) while failing to follow medical aftercare
instructions, and colliding with a motor vehicle occupied by Hoffecker; (3)
while failing to take prescribed seizure medication, and colliding with a motor
vehicle occupied by Hoffecker; or (4) while disregarding a known risk of
seizure and while having a seizure colliding with a motor vehicle occupied by
Hoffecker.  Because four alternative means of committing manslaughter were
submitted to the jury in the disjunctive, proof of any one alternative means is
sufficient for conviction.  Head v. State, 299 S.W.3d 414, 426 S.W.3d
(Tex. App.—Houston [14th Dist.] 2009, pet ref’d).  Additionally, when (as here)
a jury returns a general guilty verdict on an indictment charging alternative
theories of committing the same offense, the verdict stands if the evidence
supports any of the theories charged.  Brooks v. State, 990 S.W.2d 278,
283 (Tex. Crim. App. 1999).

Appellant argues that “the State failed to prove he
recklessly caused Hoffecker’s death by driving a vehicle contrary to medical
instruction and contrary to medical aftercare instructions.”  We disagree.

At trial, Dr. Umer testified that appellant was in
his care at the West Houston Medical Center emergency room in June 2005 after
being admitted with a seizure disorder.  Dr. Umer also testified that, before
discharging appellant, he instructed appellant not to drive a car unless
appellant had been free of seizures for six months.  Dr. Umer explained that
“most of the seizure[s] result in loss of consciousness or disattachment from
the environment and that can lead to accident[s].”  

The evidence showed that appellant had experienced numerous
seizures and had received continuous treatment for a seizure disorder since
June 2005.  Medical records dated September 7, 2006 state under “Pertinent
Social History” that appellant “was told not to drive until seizure free for at
least 6 months.”  The medical records also indicate that Dr. Richard Hrachovy
“advised [appellant] not to drive unless [he is] seizure-free for at least 6
months.”

Deputy Morales testified that he investigated appellant’s
December 12, 2007 car accident at an HEB parking lot — about three weeks before
the fatal accident — and appellant told him at the scene that appellant thought
he had had a seizure.

Paramedic Stacy Broderick testified that, on the way
to the hospital after the fatal accident, appellant told Broderick that (1) he
did not remember what happened; (2) he had a history of seizures; and (3) he
probably had had a seizure.  Broderick testified that appellant had another
seizure while he was in triage.

During cross-examination, appellant’s family
physician, Dr. Oguejiofor, reviewed appellant’s medical records.  These records
established that appellant ran out of his seizure medication on July 19, 2007
and reported having a grand mal seizure the next day:  

THE STATE: Do you recognize these [medical records], what
these are?

DR. OGUEJIOFOR: Yes, these are records from the VA
Hospital, yes.

THE STATE: Medical records pertaining to who?

DR. OGUEJIOFOR: Mr. Pugh.

*                                  *                                  *

THE STATE: First
of all, what’s the date of the note right there?

DR. OGUEJIOFOR: July 23rd, 2007.

THE STATE: Now, I’d like you to look down towards the bottom,
the second paragraph from the bottom starting where it says: He ran out of —
I’d like you to read that sentence for us, please.

DR. OGUEJIOFOR: He ran out of his medications Thursday last
week and had a grand mal seizure the next day per his report.

THE STATE: These are medical records of Donald Pugh, right?

DR. OGUEJIOFOR: Yes.

THE STATE: July 23rd, 2007.  You see what it says right
here, correct?  See that?

DR. OGUEJIOFOR: Yes.

THE STATE: That would lead you to believe that in July of
2007, the defendant had a seizure, correct?

DR. OGUEJIOFOR: Yes, that’s what he reported to the doctors,
yes.

THE STATE: And then three months later, when he comes in to
see you, he tells you what?

                                             *                         *                      *

THE STATE: In October 2007 when he comes to see you, does
he say anything about him having a grand mal seizure?

DR. OGUEJIOFOR: No.  He said he was receiving his medications
and that he was doing well.

THE STATE: So you would agree with me that he’s telling you
there is two different things happening here, correct?

DR. OGUEJIOFOR: That’s what the records would
indicate, yes.

THE STATE: Let me ask you this, Dr. Oguejiofor.  Would your
diagnosis of him being stable with his seizures, would that assessment right
here, would it be different now that you are aware of the fact he reports in
July 2007 that he had a grand mal seizure?

                                             *                         *                      *

THE STATE: Knowing that he had a grand mal seizure as reported
here in these medical records from July of 2007, do you think he should have
been out driving?

DR. OGUEJIOFOR: No.

THE STATE: No.  Why not?

DR. OGUEJIOFOR: Well, if he reports he’s having seizures, one
of the things you have to do is make sure his seizures are controlled and
controlled for a certain period of time before you can give him the go ahead to
be able to drive.

THE STATE: That wasn’t the case here, was it?

DR. OGUEJIOFOR: That would not to be the case from
what I see in the records.

Appellant’s wife, Linda Pugh,
acknowledged earlier grand jury testimony in which she stated that appellant
had his last seizure “five months and 18 days” before the fatal accident on
January 7, 2008.

Viewing all the evidence in the light most favorable
to the jury’s verdict, the jury could have found beyond a reasonable doubt that
appellant (1) was advised by doctors not to drive a vehicle unless he had been
free of seizures for six months; (2) had seizures on July 20, 2007 and December
12, 2007; and (3) drove on January 7, 2008, had a seizure while driving, and
collided with Hoffecker’s vehicle.  We conclude the evidence in this case sufficiently
supports appellant’s manslaughter conviction because it establishes that
appellant recklessly caused Hoffecker’s death by driving a vehicle “contrary to
medical instructions” and “while failing to follow medical aftercare
instructions.”   

Accordingly, we overrule appellant’s first issue.

II.              
Expert Testimony 

In his second issue, appellant contends that the
trial court abused its discretion by allowing Officer Kessler to testify at
trial as an accident reconstructionist because he did not qualify as an expert
and his testimony was not reliable.  Appellant contends that Officer Kessler did
not qualify as an expert because “he had no training in science or engineering”
and “admitted that he had never taken a class in physics or calculus before he
attended the Northwestern Traffic Institute for his certification.”  Appellant
further challenges the reliability of  Officer Kessler’s testimony that appellant’s
vehicle was traveling about 82 mph before hitting Hoffecker’s vehicle because Officer
Kessler did not understand how a measuring instrument and a Vericom 3000
machine worked.

We apply an abuse of discretion standard in reviewing
a trial court’s determination of a witness’s qualifications as an expert and
judgment regarding the admission of any expert testimony.  Ellison v. State,
201 S.W.3d 714, 723 (Tex. Crim. App. 2006).  Absent a clear abuse of
discretion, we will not disturb the trial court’s decision to admit or exclude
testimony.  Id.  A trial court abuses its discretion when its decision lies
outside the zone of reasonable disagreement.  Casey v. State, 215 S.W.3d
870, 879 (Tex. Crim. App. 2007).

A trial court’s improper admission of evidence is a
non-constitutional error.  See King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997); James v. State, 264 S.W.3d 215, 222 (Tex. App.—Houston [1st
Dist.] 2008, pet. ref’d).  Thus, an appellate court will reverse a judgment if
the improper admission of evidence affected a substantial right of the
appellant.  See Tex. R. App. P. 44.2(a), (b); King, 953 S.W.2d at
271; James, 264 S.W.3d at 222.  A substantial right is affected when the
error has a substantial and injurious effect or influence in determining the
jury’s verdict.  King, 953 S.W.2d at 271; James, 264 S.W.3d at
222.  Error that did not influence the jury’s verdict or had but a slight
effect is harmless error.  Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim.
App. 2001).  The improper admission of evidence is harmless if the trial record
contains other, properly admitted evidence that is probative of the same
matter.  See Saldano v. State, 232 S.W.3d 77, 102 (Tex. Crim. App. 2007);
James, 264 S.W.3d at 222.

Appellant’s argument fails even if we assume without
deciding that the trial court improperly admitted Officer Kessler’s testimony about
the speed of appellant’s vehicle.  The asserted error was harmless because the
speed at which appellant’s car was traveling before hitting Hoffecker’s vehicle
was not germane to the elements of the offense of manslaughter for which
appellant was indicted and convicted.  Speed was not an element of manslaughter
the State had to prove under the charge submitted to the jury in this case. 
The State had to prove only that appellant recklessly caused Hoffecker’s death
by driving or operating a motor vehicle contrary to medical instructions or
while failing to follow medical aftercare instructions, and colliding with
Hoffecker’s vehicle.  

Because the State was not required to prove that
appellant was driving a vehicle at or beyond a certain speed, the admission of
Officer Kessler’s testimony did not have a substantial and injurious effect or
influence in determining the jury’s verdict.[2] 
See King, 953 S.W.2d at 271.  The jury heard testimony that
appellant had been advised not to drive a car unless he had been free of
seizures for six months, and that appellant had had seizures within six months
of the fatal accident.  

Because speed was not an element of the offense, any
asserted error in admitting Officer Kessler’s testimony was harmless. 
Therefore, we overrule appellant’s second issue.

III.           
Continuance

In his third issue, appellant argues that the trial
court abused its discretion in denying his April 15, 2009 motion for
continuance.  Appellant contends that, although the trial court granted a subsequent
motion for continuance on May 5, 2009 and continued the case until May 18,
2009, “this limited continuance failed to remove the prejudice of trying a case
under a new indictment so shortly after its filing” because he “needed more
than 13 days to prepare his defense for a new theory of Manslaughter without
intoxication.”

We review a trial court’s ruling on a motion for
continuance for abuse of discretion.  Gallo v. State, 239 S.W.3d 757,
764 (Tex. Crim. App. 2007).  To establish an abuse of discretion, a defendant
must show he was actually prejudiced by the denial of his motion.  Id.  Speculation
will not suffice to obtain reversal for a trial court’s failure to grant a
continuance.  See Renteria v. State, 206 S.W.3d 689, 702 (Tex. Crim. App.
2006).

An appellate court will conclude the trial court’s
denial of a motion for continuance was an abuse of discretion “‘only if the
record shows with considerable specificity how the defendant was harmed by the
absence of more preparation time than he actually had.  This showing can
ordinarily be made only at a hearing on a motion for new trial, because almost
always only at that time will the defendant be able to produce evidence as to
what additional information, evidence or witnesses the defense would have had
available if the motion for delay had been granted.’”  Gonzales v. State,
304 S.W.3d 838, 842-43 (Tex. Crim. App. 2010) (quoting George E. Dix &
Robert O. Dawson, 42 Tex. Practice: Criminal Practice and Procedure § 28.56 (2d
ed.2001)). 

Appellant filed an unsworn motion for continuance on
April 15, 2009 in which he requested the trial court continue the case and set
a new trial date because (1) the State re-indicted him “on a new charge of
manslaughter” on April 2, 2009; and (2) trial counsel “sustained either a very
severe sprain and bone bruise or a bone chip fracture.”  The trial court denied
appellant’s unsworn motion for continuance.   

The Legislature has set out the requirements for a
motion for continuance in Articles 29.03 and 29.08 of the Texas Code of
Criminal Procedure.  Anderson v. State, 301 S.W.3d 276, 278-79 (Tex.
Crim. App. 2009).  Article 29.03 states: “A criminal action may be continued on
the written motion of the State or of the defendant, upon sufficient cause
shown; which cause shall be fully set forth in the motion.”  Tex. Code Crim.
Proc. Ann. art. 29.03 (Vernon 2006). Article 29.08 provides: “All motions for
continuance must be sworn to by a person having personal knowledge of the facts
relied on for the continuance.”  Tex. Code Crim. Proc. Ann. art. 29.08 (Vernon
2006).

The court of criminal appeals has construed these
statutes to require a sworn written motion to preserve appellate review from a
trial court’s denial of a motion for continuance.  Anderson, 301 S.W.3d
at 279.  Thus, if a party makes an unsworn motion for continuance and the trial
court denies it, the party forfeits the right to complain about the trial
court’s ruling on appeal.  Id.  Because appellant’s April 15 motion for
continuance was unsworn, appellant forfeited his right to complain about the
trial court’s ruling on appeal.  See id.

Accordingly, we overrule appellant’s third issue.

IV.            
Recusal

In his fourth issue, appellant asserts that Judge Stricklin
abused her discretion by denying appellant’s motion to recuse the trial judge. 
Appellant contends that the evidence shows the trial judge was biased “against
[appellant] by revoking his bond while he remained hospitalized for his
fainting spells.”  To support his assertion that the trial judge was biased,
appellant argues that his trial counsel: (1) testified that the trial judge
revoked appellant’s “bond and ordered that he be taken into custody even though
he was in the hospital for a serious medical condition;” (2) introduced a
letter into evidence from Dr. Roger Rossen which encouraged appellant’s continued
stay in the hospital; (3) “alleged that Judge Campbell retaliated against
[a]ppellant by revoking his bond after he filed his pro se Motion to Recuse;”
and (4) “contended that Judge Campbell was biased against [a]ppellant by not
granting a longer continuance for [a]ppellant to produce proper medical
evidence.”

We review the denial of a motion to recuse under an
abuse of discretion standard. Tex. R. Civ. P. 18a(f); Wesbrook v. State,
29 S.W.3d 103, 120 (Tex. Crim. App. 2000). The trial court abuses its
discretion only if the ruling on the motion was not within the zone of
reasonable disagreement.  Roman v. State, 145 S.W.3d 316, 319 (Tex.
App.—Houston [14th Dist.] 2005, pet. ref’d); see Wesbrook, 29
S.W.3d at 120.  We consider the totality of the evidence elicited at the
recusal hearing.  Roman, 145 S.W.3d at 319.

A judge ruling on a motion alleging bias as a ground
for disqualification must decide whether the movant has provided facts
sufficient to establish that a reasonable person, knowing all the circumstances
involved, would harbor doubts as to the impartiality of the trial judge.  Kemp
v. State, 846 S.W.2d 289, 305 (Tex. Crim. App. 1992).  Bias may be a ground
for disqualification only when it is shown to be of such nature, and to such
extent, as to deny the defendant due process of law.  Id.  

At the May 5, 2009 recusal hearing, appellant’s trial
counsel argued that the trial judge’s revocation of appellant’s bond was
punitive and evidenced bias warranting recusal.  Appellant’s counsel claimed
that appellant “faces substantial danger to his health if he is sitting,
standing, or moving around,” and that appellant’s release from the hospital
would be contrary to medical advice.  No medical records or documentation were
presented substantiating these assertions regarding appellant’s condition. 
Instead, trial counsel stated, “I anticipate that we will be able to obtain a
letter from the doctor that says, you know, it is a substantial risk to his
health.”  

Appellant’s counsel also questioned whether the trial
judge revoked appellant’s bond in retaliation for appellant having filed a pro
se recusal motion before trial began.  Counsel acknowledged that the trial
judge granted appellant’s motion for continuance when she revoked his bond and
continued appellant’s case for 13 days.  To support the bias assertion, counsel
offered appellant’s pro se recusal motion and a letter by Dr. Rossen.  Dr. Rossen’s
letter described the examinations and studies the doctors had performed during
appellant’s various hospital stays between April 21, 2009 and May 4, 2009.  Dr.
Rossen concluded his letter by stating, “We plan additional studies of the
blood vessels of his head this week and a summary evaluation by our colleagues
in Neurology.  We encourage him to stay the course and complete these studies.”

Contrary to appellant’s assertion on appeal, no
evidence was presented in the trial court substantiating appellant’s claims that
(1) he was in “the hospital for a serious medical condition;” (2) his release
from the hospital would be contrary to medical advice; or (3) the trial judge
retaliated against him for filing a pro se motion to recuse.  Nor did
appellant’s counsel contend at the hearing “that Judge Campbell was biased
against [a]ppellant by not granting a longer continuance for [a]ppellant to produce
proper medical evidence.”

At the May 5 hearing, the State argued that appellant
fainted on April 21, 2009 when the trial judge refused to consider appellant’s
pro se recusal motion because appellant’s trial attorneys did not want to adopt
the motion.  Emergency medical technicians were called to the court, evaluated
appellant, reported that appellant was fine, and took appellant to the hospital
for an evaluation.  The trial court continued appellant’s case until April 29,
2009.  

The State presented evidence that appellant was
admitted to the hospital and evaluated on April 21, 2009 and April 23, 2009.  The
State introduced appellant’s medical records, which stated, “Patient also
report[s] symptoms of dizziness and light-headedness . . . .  Work-up for
syncopal episode by primary team negative so far.  . . .  In addition, patient
under trial regarding manslaughter charges, so malingering is of
consideration.”  

The State also argued that, after the jury was seated
and the State presented evidence on April 30, 2009, appellant stated that he
was not feeling well.  The State argued that “Judge Campbell was very
accommodating and allowed us to recess for the day.”  Appellant voluntarily
checked himself into the hospital that night.  The State introduced appellant’s
medical records dated May 1, 2009.  Under the heading “Assessment/Plan,” the
medical records state: “Neurology also pointed out that patient is undergoing
trial regarding [sic] for manslaughter charges, so raised possibility of
malingering.”  Nothing in the records indicated that appellant should not be
released from the hospital.  

In its closing argument at the May 5 hearing, the
State argued that the trial court took into account that appellant is “a true
habitual who is out on bond, has tested positive while out on bond.”  The State
concluded by stating that, “Nothing has been shown by the Defense that Judge
Campbell is biased or has punished or done anything else unfairly towards the
defendant in this case.”

Based on the record before us, we conclude that
appellant failed to demonstrate at the May 5 hearing that the trial judge
possessed any bias — much less sufficient bias to interfere with appellant’s due
process rights.  See Wesbrook, 29 S.W.3d at 121.  Therefore, the
presumption of judicial impartiality was not overcome by appellant.  See id.
 Judge Stricklin acted within her discretion in denying appellant’s motion to
recuse the trial judge.  See Tex. R. Civ. Proc. 18a(f); Wesbrook,
29 S.W.3d at 121.  

We overrule appellant’s fourth issue.

V.               
Admission of Evidence

In his fifth issue, appellant argues that the trial
court abused its discretion by “allowing evidence of the extraneous December
12, 2007, car accident.”  Appellant argues that “[t]he evidence shows that the
only similarity between the accidents of December 12, 2007, and January 7,
2008, is that they are both car accidents” because “no medical records exist to
prove that a seizure caused Appellant to crash his car into a wall.”  Appellant
contends the only evidence establishing that appellant suffered a seizure at
the time of the December 12 accident is Deputy Morales’s trial testimony; Deputy
Morales testified that appellant told him after the December 12 accident that he
had a seizure.  Appellant contends that, because Deputy Morales did not include
appellant’s statement that he had a seizure in his accident report, “[t]he
prejudicial effect of his testimony outweighs it[s] probative value when he
testified in court about statements which he failed to include in an accident
report.”  As framed, appellant’s issue challenges the admissibility under Texas
Rules of Evidence 404(b) and 403 of any evidence relating to the December 12 accident
in the HEB parking lot.

In order to preserve error concerning the admission
of evidence, a party must make a proper objection each time the allegedly
inadmissible evidence is offered or obtain a running objection.  Lane v. State,
151 S.W.3d 188, 193 (Tex. Crim. App. 2004); Valle v. State, 109 S.W.3d
500, 509 (Tex. Crim. App. 2003).  An error, if any, in the admission of
evidence is cured if evidence similar to the objected-to evidence is admitted
without objection elsewhere at trial.  Lane, 151 S.W.3d at 193 (citing Leday
v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)).

At trial, two witnesses testified about the December
12 accident.  HEB employee Sanchez testified that he observed appellant on
December 12; appellant drove in the store parking lot, hit a parked truck,
turned his vehicle around, sped up and hit the store’s exterior wall.  Sanchez
testified that that appellant was sitting in the vehicle and “had his foot on
the gas all the way down.”  Appellant “looked like he was out of it in a way.  He
just had a straight focused mind.”

Deputy Morales testified without objection that he
was dispatched to the scene of the December 12 accident at approximately 12:30 p.m. 
Deputy Morales created “a diagram of the accident scene and how it occurred,
where it started and ended.”  The State published the diagram to the jury. 
Deputy Morales testified that the accident occurred as drawn on his diagram,
indicating that appellant hit a parked truck before hitting the wall of the HEB
store.  Deputy Morales also testified several times without objection that
appellant had told him he had a seizure.

Appellant objected to Sanchez’s testimony at trial.  Even
if we assume appellant’s objection covered all of Sanchez’s testimony regarding
the December 12 accident, no objection was lodged at trial to Deputy Morales’s
testimony about the circumstances of the accident and appellant’s statements to
Deputy Morales that appellant had a seizure. 

Accordingly, we overrule appellant’s fifth issue.

Conclusion

We affirm the judgment of the trial court.








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Seymore,
Boyce, and Christopher.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 

 









[1]
Syncope is a fainting episode that can be caused by many reasons including
blood loss, dehydration, and blood pressure disorder.





[2]
Additionally, Krystal Ramsey testified that appellant was driving between 55 or
60 mph, and that she did not hear braking noises before the collision even
though the light at the intersection was red.  Officer Taylor testified that
the speed limit on the portion of the feeder road on which the accident
occurred is 35 mph.  Even if speed had been germane to the elements of the
offense of manslaughter for which appellant was indicted and convicted, Officer
Kessler’s testimony that appellant exceeded the speed limit on the feeder road
was cumulative of Ramsey’s testimony.